UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ X
                                                             :
FLINTLOCK CONSTRUCTION SERVICES,     :
LLC,                                                         :
                                      Petitioner,   :          23 Civ. 1701 (LGS)
                                                             :
                      -against-                       :          **OPINION AND ORDER**
                                                             :
ARCH SPECIALTY INSURANCE COMPANY,   :
et al.,                                                      :
                                      Respondents.  :
------------------------------------------------------------ X

LORNA G. SCHOFIELD, District Judge:

        On November 16, 2022, the American Arbitration Association (the "AAA") issued an

award (the "Award") against Petitioner, Flintlock Construction Services LLC, in favor of

Respondents, Arch Specialty Insurance Company and Catlin Special Insurance Company.  At

issue are Flintlock's Amended Petition to vacate the Award and Respondents' cross-motion to

confirm the Award.  For the following reasons, Petitioner's motion to vacate is denied, and

Respondents' motion to confirm is granted.  Respondents' related request for attorney's fees is

denied.

## I.      BACKGROUND

        The following facts are taken from the sworn declarations of the parties' counsel and

attached exhibits, including the Award.

        Petitioner, a general contractor, was insured under a Subcontractor Default Insurance

Policy (the "Policy") purchased from Respondents.  In 2018, Petitioner filed a claim under the

Policy in connection with the default of its subcontractor, BMNY Contracting Corp. ("BMNY"),

for defective supply and/or installation of concrete on a construction project in Manhattan.  The

parties disagreed over coverage and payment under the Policy.  Petitioner initiated an arbitration

proceeding against Respondents, and the parties later reached a settlement in the amount of $9.2 million (the "Settlement Agreement").

One term of the Settlement Agreement required Petitioner, at its own expense, to continue pursuing its state court action against certain parties who allegedly were responsible for the loss resulting from the BMNY default (the "Recovery Action"). Under a "waterfall provision," Petitioner and Respondents agreed that "[a]ny recoveries or damages obtained by [Petitioner] in connection with the Recovery action shall be shared among [Petitioner] and [Respondents]" according to the following formula: the first $2 million shall be split evenly between Petitioner (50%) and Respondents (25% and 25%); the next $500,000 shall go entirely to Petitioner and any remainder shall be split with half to Petitioner and half to Respondents (25% and 25%). Interpretation of this waterfall provision -- specifically the "any recoveries or damages" language -- is the subject of the Award at issue on this motion. The Settlement Agreement contains an arbitration provision which states, "Any dispute relating in any manner to this Settlement Agreement shall be heard in arbitration following the arbitration provision of the SDI Policy."

A number of proceedings followed the Settlement Agreement, initiated by various entities. Relevant to the present action, two concrete suppliers initiated an arbitration proceeding against Petitioner and BMNY, alleging breach of contract and wrongful termination, among other claims. The Recovery Action parties agreed to withdraw that action pending a determination in the arbitration. Petitioner and Respondents also agreed that the Recovery Action was effectively subsumed by this arbitration, which would determine the issue of defective concrete, and that the arbitration constituted the Recovery Action for purposes of the Settlement Agreement. The arbitration was bifurcated so that liability and damages would be

determined at different stages.  After fifteen days of hearings, the arbitrator issued a liability

award in favor of Petitioner and BMNY against the concrete suppliers (the "Interim Award").

The arbitrator decided against Petitioner on its claim against BMNY, holding that BMNY did not

default under its subcontract with Petitioner.  The arbitrator awarded BMNY damages against

Petitioner for BMNY's contract retainage.

   After liability was determined but before the arbitrator reached the damages phase,

Petitioner, BMNY and the concrete suppliers entered a global settlement (the "Global

Settlement") whereby the parties agreed that the concrete suppliers would pay Petitioner and

BMNY $8,700,000 in "full and final settlement" of any claims related to concrete supplied to the

construction project.  A portion, $349,500, was allocated to Petitioner to settle a dispute

unrelated to the construction project.  The balance of $8,350,500 was allocated $7,100,000 to

Petitioner and $1,250,000 to BMNY.[1]  Petitioner and BMNY also agreed that BMNY's retainage

claim against Petitioner would be settled for $3,434,845.20.  Accordingly, the final allocation of

the $8.7 million Global Settlement was $4,014,654.80 to Petitioner and $4,684,845.20 to

BMNY.

   In a separate agreement between Petitioner and BMNY, executed simultaneously with the

Global Settlement, the two agreed to settle any remaining claims against each other related to the

construction project.  Petitioner paid BMNY $225,000 and BMNY agreed to forfeit to Petitioner

the $4,684,845.20 it had been allocated under the Global Settlement.  Considering the Global

---

[1] The Global Settlement appears to contain a calculation error, as it allocates $500 less than the
$8,350,500 to be shared by Petitioner and BMNY.  $7,100,000 + $1,250,000 = $8,350,000.
This Opinion defers to the parties' characterizations of the figures.  The $500 discrepancy has no
bearing on the Opinion's legal analysis or conclusion.

Settlement and the Petitioner/BMNY settlement together, Petitioner recovered $8,125,500 related to the construction project.[2]  The present dispute arose from this figure.

An escrow attorney for Petitioner then made a distribution of $1,582,827.40 to Respondents pursuant to the waterfall provision in the Settlement Agreement.  In calculating the amount due to Respondents, the attorney excluded from the "recoveries or damages obtained by [Petitioner]" the $4,684,845.20 that had been allocated to BMNY under the Global Settlement. Respondents disputed this interpretation of the waterfall provision, arguing that their share should have been based on the $8,125,500 that Petitioner ultimately netted.  Using that figure, Respondents were entitled to an additional $2,342,423.  This amount was placed in escrow pending resolution of the dispute.

In accordance with the Settlement Agreement, Petitioner commenced a AAA arbitration against Respondents.  AAA appointed a panel of three arbitrators mutually selected by the parties (the "Panel").  The parties submitted cross-motions for summary judgment, and oral argument was held on October 10, 2022.  On November 16, 2022, the Panel issued the Award in Respondents' favor, finding that the "plain and unambiguous meaning" of the Settlement Agreement subjects the entire amount credited to Petitioner to the waterfall provision.  The award directed Petitioner to pay Respondents the $2,229,923.60 they sought.[3]

---

[2] This represents the $8.7 million total from the Global Settlement, less the $349,500 that was paid to Petitioner to settle an unrelated matter and the $225,000 Petitioner paid to BMNY in their private agreement.  $8,700,000 – $349,500 – $225,000 = $8,125,500.

[3] This figure differs slightly from the $2.34 million Respondents initially sought due to a stipulation of the parties made during arbitration.

## II.    STANDARD

The parties disagree about whether Article 75 of the New York Civil Practice Law and Rules ("CPLR") or the Federal Arbitration Act ("FAA") provides the relevant legal standard. Both parties contend that either body of law yields their preferred outcome, but Petitioner argues for the application of CPLR while Respondents press federal law.  Ultimately, it is unnecessary to decide which law applies.  For the reasons discussed below, the petition to vacate fails under either standard.

There is little practical difference between the standards applied by the CPLR and the FAA to the question of whether an arbitral award should be vacated.  Under either standard, judicial review of arbitration awards is deferential, limited and narrowly circumscribed.  *See Seneca Nation of Indians v. New York*, 988 F.3d 618, 625 (2d Cir. 2021) (FAA); *In re Falzone (New York Cent. Mut. Fire Ins. Co.)*, 939 N.E.2d 1197, 1198-99 (N.Y. 2010) (CPLR); *cf. Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 589 n.7 (2008) ("The text of the FAA was based upon that of New York's arbitration statute.").

Both sources of law provide that an arbitral award may be vacated if: (1) the arbitrator was partial, (2) the award was procured by corruption or fraud; (3) the arbitrator was guilty of misconduct or (4) the arbitrator exceeded his or her power.  *See* 9 U.S.C. § 10(a); CPLR § 7511(b)(1); *see also Magid v. Waldman*, No. 19 Civ. 11516, 2020 WL 4891218, at *3 (S.D.N.Y. Aug. 19, 2020) (comparing the two statutes).  Under both statutes, the court must confirm an award unless one of the statutory grounds for vacatur or modification is satisfied.  *See* 9 U.S.C. § 9; CPLR § 7510.

Regardless of which law applies, "courts are reluctant to disturb the decisions of arbitrators lest the value of this method of resolving controversies be undermined."[4] *Matter of Goldfinger v. Lisker*, 500 N.E.2d 857, 859 (N.Y. 1986) (CPLR); *Rich v. Spartis*, 516 F.3d 75, 81 (2d Cir. 2008) ("[A]n arbitration award should be enforced [under the FAA], despite a court's disagreement with it on the merits, if there is a barely colorable justification for the outcome reached."); *accord Magid*, 2020 WL 4891218, at *3.  Under both the FAA and CPLR, the party seeking to vacate or modify an arbitral award bears a "heavy burden . . . ." *Verille v. Jeanette*, 163 A.D.3d 830, 830-31 (2d Dep't 2018); *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2006) ("A party moving to vacate an arbitration award has the burden of proof, and the showing required to avoid confirmation is very high.").

## III.   DISCUSSION

### A. Vacatur of the Award

Petitioner's argument is that the Award should be vacated because the Panel exceeded its powers by vacating or rewriting the Interim Award or Global Settlement.  Petitioner presents this argument using several different theories -- that the Award violates public policy, is irrational, flouts *res judicata* or is in manifest disregard of the law.  But none of these prevails. "[A]rbitrators exceed their power within the meaning of the CPLR only when they issue an award that violates a strong public policy, is irrational or clearly exceeds a specifically enumerated limitation on the arbitrator's power."  *Am. Int'l Specialty Lines Ins. Co. v. Allied Cap. Corp.*, 149 N.E.3d 33, 37 (N.Y. 2020).  Likewise, under the FAA, the focus of the inquiry is "whether the arbitrator[] had the power, based on the parties' submissions or the arbitration

---

[4] Unless otherwise indicated, in quoting cases, all internal quotation marks, footnotes and citations are omitted, and all alterations are adopted.

agreement, to reach a certain issue, not whether the arbitrator correctly decided that issue." *Smarter Tools Inc. v. Chongqing SENCI Imp. & Exp. Trade Co.*, 57 F.4th 372, 382 (2d Cir. 2023). The Second Circuit has "consistently accorded the narrowest of readings to Section 10(a)(4)," the provision of the FAA allowing for vacatur when an arbitrator exceeds his power. *Id.* Vacatur was necessary under the FAA when, for example, "the arbitrators exceeded their powers by determining the rights of a corporation not party to the arbitration . . . or awarded for events not governed by the arbitration agreement." *Id.*

Under either the CPLR or FAA standards, there is no basis to conclude that the Panel exceeded its powers. As Petitioner acknowledges, it commenced the arbitration to determine "the proper allocation of the recovery proceeds under the Settlement Agreement." This is exactly what the Panel did. In finding for Respondents, the Panel determined that "[Petitioner] mistakenly deems the retainage amount as having been awarded to BMNY" in the Global Settlement. The Panel found "neither persuasive nor consistent with the plain meaning of the [Settlement Agreement]" Petitioner's attempt to "exclude from sharing the $1,250,000.00 allocated to BMNY" by the Global Settlement -- most of which BMNY ultimately forfeited in its separate agreement with Petitioner. Necessary to the Panel's application of the waterfall provision was an interpretation of whether the funds allocated among the concrete suppliers, Petitioner and BMNY were included in the "recoveries or damages" contemplated by the Settlement Agreement. But the mere act of interpretation does not amount to a "partial vacatur of the Interim Award." Nor does it amount to a "rewriting" of any of the settlement agreements between Petitioner, BMNY or the concrete suppliers, as Petitioner argues. Nothing in the Award affects or disturbs Petitioner's rights and obligations vis-à-vis BMNY or the concrete suppliers. And the Interim Award, Petitioner concedes, dealt not with damages or financial obligations, but

exclusively with the issue of liability.  Any liabilities or obligations rendered by the Interim Award were effectively extinguished by the Global Settlement that followed.

Petitioner points to the transcript of the oral hearing as evidence that the Panel exceeded its powers by discussing the Interim Award and then "partially vacating" that award by revoking the retainage award to BMNY.  But the Panel made no such revocation.  To the degree that a revocation occurred, it was a function of the private agreement between Petitioner and BMNY, under which BMNY received $225,000 in exchange for relinquishing its right to what it had been allocated under the Global Settlement.  Petitioner seems to suggest that, because the Panel discussed the retainage holding of the Interim Award at the oral hearing, it must have based the Award on a revision of the Interim Award and then used its analysis of the Settlement Agreement as pretext for its decision.  This is unfounded.  The Award clearly states that its reasoning flows from the "plain and unambiguous meaning of the agreement," and not from any alteration to rulings or settlements ancillary to the Settlement Agreement.  This is more than enough to satisfy the "barely colorable justification for the outcome reached by the arbitrators" that is necessary to confirm the award.  *See Smarter Tools Inc. v. Chongqing SENCI Imp. & Exp. Trade Co.*, 57 F.4th 372, 378 (2d Cir. 2023); *Wien & Malkin LLP v. Helmsley-Spear, Inc.*, 846 N.E.2d 1201, 1206 (N.Y. 2006) (same, in the context of the CPLR).  That the Panel discussed the Interim Award or subsequent settlement agreements at the hearing is insufficient to contradict the clear and sound rationale for its conclusion that is stated on the face of the Award.  Petitioner's allegations that the Panel rendered its Award by considering issues beyond the scope of its charge are, at most, conclusory.

Petitioner's argument that the Award should be vacated as violative of public policy is similarly unconvincing.  Petitioner's argument to this effect is just a repackaging of its argument

that the Panel inappropriately vacated the Interim Award.  Pursuant to the CPLR, "[c]ourts will only intervene in the arbitration process in those cases in which public policy considerations, embodied in statute or decisional law, prohibit, in an absolute sense, particular matters being decided or certain relief being granted by an arbitrator." *City Sch. Dist. of New York v. McGraham*, 958 N.E.2d 897, 898 (N.Y. 2011).  Under the FAA, "a court's task in reviewing possible violations of public policy is limited to determining whether the award itself, as contrasted with the reasoning that underlies the award, creates an explicit conflict with other laws and legal precedents and thus clearly violates an identifiable public policy." *Commodities & Mins. Enter. Ltd. v. CVG Ferrominera Orinoco, C.A.*, 49 F.4th 802, 818-19 (2d Cir. 2022). Petitioner identifies no public policy, articulated in any statute or caselaw, that the Award violates.  As explained above, the Panel's decision did not vacate the Interim Award, expressly or otherwise.  Petitioner's attempt to rehabilitate that losing argument as an argument that the Award violates public policy fails.

Petitioner's argument that the award should be vacated or modified because it is irrational also fails.  Petitioner grounds this argument, once again, in its incorrect assessment that the Panel vacated or misconstrued the Interim Award.  The same goes for Petitioner's argument that the Panel failed to give preclusive effect to the Interim Award consistent with the doctrine of *res judicata*.  While past determinations in arbitral awards do have a "binding effect" that is not subject to relitigation, no relitigation took place here.  *See Pike v. Freeman*, 266 F.3d 78, 90 (2d Cir. 2001); *accord Wang v. Skype Commc'ns S.A.R.L*, No. 21 Civ. 8082, 2022 WL 883773, at *1 (S.D.N.Y. Jan. 3, 2022).  The Award did nothing to disturb a prior arbitral award or court ruling. The arbitrator in the Recovery Action made findings as to liability.  Before an arbitral decision on damages was reached, Petitioner, BMNY and the concrete suppliers freely negotiated and

agreed to the Global Settlement, with a separate settlement agreement freely negotiated and agreed to between Petitioner and BMNY.  The Award interprets what portion of Petitioner's recovery under those two settlements is subject to the Settlement Agreement's waterfall provision.  The Award does not nullify, contradict or otherwise amend any prior arbitral award.

### B.  Attorney's Fees

Respondents' request for attorney's fees is denied.  "Generally, in a federal action, attorney's fees cannot be recovered by the successful party in the absence of statutory authority for the award." *Commodities & Mins. Enter. Ltd.*, 49 F.4th at 819.  "Section 9 of the FAA does not provide such statutory authority, because it makes no mention of the recovery of attorney's fees.  Still, a court retains inherent equitable powers to award attorney's fees when the opposing counsel acts in bad faith, vexatiously, wantonly, or for oppressive reasons." *Id.*  To ensure, however, that fear of an award of attorney's fees will not deter persons with colorable claims from pursuing those claims, there must be both "clear evidence that the challenged actions are entirely without color and are taken for reasons of harassment or delay or for other improper purposes and a high degree of specificity in the factual findings of the [court]." *Wilson v. Citigroup, N.A.*, 702 F.3d 720, 724 (2d Cir. 2012); *accord Automated Mgmt. Sys., Inc. v. Rappaport Hertz Cherson & Rosenthal P.C.*, No. 16 Civ. 4762, 2023 WL 5570618, at *7 (S.D.N.Y. Aug. 29, 2023).  Here, although Petitioner's arguments fail, the record does not support a finding that Petitioner acted "in bad faith, vexatiously, wantonly, or for oppressive reasons." *See Commodities & Mins. Enter. Ltd.*, 49 F.4th at 819.

**IV.    CONCLUSION**

For the foregoing reasons, Petitioner's motion to vacate the award is DENIED and

Respondents' cross-motion to confirm is GRANTED.  Respondents' request for attorney's fees is

DENIED.

The Clerk of Court is respectfully directed to close the motion at Dkt. 20 and to terminate

this case.

Dated: February 29, 2024
      New York, New York

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE